UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERESA F. JONES,

                              Plaintiff,

      v.                                    **DECISION AND ORDER**
                                                        14-CV-556S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

1.      Plaintiff Teresa F. Jones challenges an Administrative Law Judge's ("ALJ") decision, dated November 8, 2012, wherein the ALJ determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. She now contends that this determination is not based upon substantial evidence, and reversal is warranted.

2.      Plaintiff filed an application for disability insurance benefits on February 24, 2011, alleging a disability beginning on June 1, 2006. The application was initially denied on May 2, 2011, and Plaintiff was granted a hearing on that denial. She and a vocational expert testified before the ALJ on August 17, 2012. Following the ALJ's denial of the application, the Appeals Council denied Plaintiff's request for review on May 14, 2014, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on July 10, 2014.

3.      Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.      A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §

§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

    7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

    8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since June 1, 2006, her alleged onset date (R. 20);[1] (2) Plaintiff had the following severe impairment: depression (R. 20-21); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 22-23); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: only occasional interaction with the public, (R. 23-25); and (5) Plaintiff was capable of performing her past relevant work as a data entry clerk and title searcher. (R. 25-26.)

10. Plaintiff arguments that remand is warranted in this case stem from an ALJ's affirmative duty to develop the administrative record, an obligation resulting from "the essentially non-adversarial nature of a benefits proceeding." Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir.1992). This duty exists even when, as here, the claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity. See 20 C.F.R. § 404.1513(e); see also Haymond v. Colvin, No. 1:11-CV-0631(MAT), 2014 WL 2048172, *7 (W.D.N.Y. May 19, 2014). Therefore the ALJ's obligation is only triggered when inconsistencies or inadequacies in the record necessitate further information. See Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez, 77 F.3d at 48)). If the record is inadequate, the ALJ first will contact the claimant's treating source to obtain the information, or if the information is not readily available from the treating source, the ALJ may ask the claimant to attend a

---

[1] Citations to the underlying administrative record are designated as "R."

consultative examination at the Social Security Administration's expense. Haymond, 2014 WL 2048172 at *7; see generally 20 C.F.R. § 404.1519a.

11. Plaintiff first contends that the ALJ erred by giving little weight to the opinion of Karen Kempkes, R.N., without further developing the record to resolve any issues of inconsistency or incompleteness. (Pl's Mem of Law at 10-14; Pl's Reply Mem at 1.) Nurse Kempkes indicated on a partially-completed mental residual functional capacity questionnaire that Plaintiff's mental impairment would cause her to be absent from work more than four days per month. (R. at 292-96.) She further indicated that Plaintiff would not be able to engage in full-time competitive employment. The ALJ gave this opinion little weight because Nurse Kempkes "did not attach a narrative statement to explain her opinion, and she did not attach any objective evidence to support her opinion." (R. at 25.) The ALJ also noted that, despite her conclusions, the nurse also found that Plaintiff had no limitations in her ability to interact with the public, maintain socially appropriate behavior, and use public transportation. (Id.) Plaintiff contends that any ambiguity in Nurse Kempkes' assessment triggered the ALJ's duty to develop the record by recontacting the nurse for clarification.

Initially, as Plaintiff concedes, a nurse is not an "acceptable medical source" whose opinion may be used to establish the existence of an impairment. See 20 C.F.R. § 404.1513(a),(d). Instead, evidence from "other sources" such as nurses, may be used to show the severity of an impairment and how it affects a claimant's ability to work. See 20 C.F.R. § 404.1513(d). The distinction between these two types of sources, and the emphasis placed on an ALJ's duty to develop the record with respect to a claimant's treating physician, has led several courts to the conclusion that the obligation to recontact does not extend to a provider that is not an "acceptable" medical source. Spina v. Colvin,

5

No. 5:11-CV-1496, 2014 WL 502503, *6 (N.D.N.Y. Feb. 7, 2014) (citing Dickson v. Astrue, No. 06–CV–511, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008); see Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002) (noting that an ALJ has a particular duty to obtain a treating physician's opinion due to the regulatory requirement that such opinions generally be given controlling weight); see also Comparetto v. Colvin, No. No. 3:11-CV-1514, 2013 WL 1193353, *10 (N.D.N.Y. March 22, 2013) (ALJ was not compelled by regulation to recontact a nurse, inasmuch as the nurse was not a "treating source"); Beebe v. Astrue, No. 5:10-CV-1467(MAD), 2012 WL 3791258, *10 (N.D.N.Y. Aug. 31, 2012)(same).

Plaintiff highlights that the regulations nonetheless permit an ALJ to recontact a claimant's "treating physician, psychologist, or *other medical source*" without limiting this last category to "treating" or "acceptable" medical sources. (Pl's Mem of Law at 13 (citing 20 C.F.R. §§ 404.1520b(c)(1) (emphasis added)) That paragraph continues, however, by stating that there is no duty to "seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." 20 C.F.R. § 404.1520b(c)(1). Here, as summarized by the ALJ, Nurse Kempkes expressly declined to assess Plaintiff's mental abilities and aptitudes with respect to work at various skill levels, noting that a separate evaluation had been scheduled for that purpose and Plaintiff failed to attend. (R. at 25, 294-95.) Further, the questionnaire specifically requested that the examiner describe the clinical findings which supported the finding of any mental impairments, yet Nurse Kempkes declined to respond. (R. at 25, 292.) Thus, there is no basis for concluding that recontacting this source would yield additional information. See 20 C.F.R. § 404.1520b(c)(1).

12.    Plaintiff further argues that remand is necessary regardless because, having

6

rejected Nurse Kempkes assessment, the ALJ improperly determined Plaintiff's RFC "using his own quasi-medical judgment," which was unsupported by any medical opinion. (Pl's Mem of Law at 14-17.) On this point, this Court agrees.

"Although an ALJ is not required to request an opinion from a treating physician or to order a consultative examination in every case, generally 'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.' " Ramos v. Colvin, No. 13-CP-6503P, 2015 WL 925965, *9 (W.D.N.Y. Mar. 4, 2015) (quoting Dailey v. Astrue, No. 09-CV-099(A)(M), 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010)). "Accordingly, although the RFC determination is an issue reserved for the Commissioner, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself." Ramos, 2015 WL 925965 at *9 (internal quotation marks, brackets, and citation omitted).

Here, because the ALJ concluded that Plaintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying Plaintiff's mental limitations rendered the record incomplete. See Ramos, 2015 WL 925965 at *10 (collecting cases); see also Haymond, 2014 WL 2048172 at *7; cf. Ocasio v. Astrue, 32 F. Supp. 3d 289, 295-96 (N.D.N.Y. 2012) (no duty to obtain a consultative examination for a RFC assessment where the ALJ appropriately determined that the claimant's alleged depression was not a severe impairment). Notably, the state agency review psychologist

reviewed Plaintiff's medical records through April 2011 and indicated that there was insufficient evidence to review Plaintiff's claim. (R. at 189.) Although the ALJ stated that additional evidence had been submitted to resolve that failing, no detail is offered as to what evidence the ALJ found clarifying. Indeed, the only other assessment offered was that of Nurse Kempkes, which was incomplete and rejected in large part by the ALJ. Remand is therefore warranted for the ALJ to either request a consultative mental RFC assessment or obtain a medical source statement from an acceptable medical source regarding the functional limitations caused by Plaintiff's mental impairments.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED;

FURTHER, that the decision of the ALJ is REVERSED and this matter is REMANDED to the Commissioner of Social Security for further proceedings consistent with the above decision;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: September 1, 2015
        Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge